731 So.2d 414 (1999)
STATE of Louisiana
v.
Alfred CLAY.
No. 97-KA-2858.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 1999.
Rehearing Denied April 14, 1999.
*415 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher Albert Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, and Judge JAMES A. GRAY, II.
LANDRIEU, Judge.
Defendant, Alfred Clay, was charged by bill of information with two counts of possession of heroin with intent to distribute, violations of La.Rev.Stat. 40:966(A)(1). The trial judge denied defendant's motion to suppress the evidence. At trial, a jury found him guilty as charged in count one and guilty of simple possession in count two. Following a waiver of the statutory delay, the trial court sentenced the defendant to life imprisonment without benefit of probation, parole or suspension of sentence on count one and to ten years at hard labor on count two; the sentences are to run concurrently.
Defendant appeals, raising two assignments of error. First, he argues the evidence is insufficient to sustain the conviction in count one for possession with the intent to distribute. Second, he argues the seizure of the evidence as to both counts was unlawful. Because we find the evidence in count one was illegally seized, we pretermit discussion of defendant's first assignment of error.

STATEMENT OF THE FACTS
In the early afternoon of July 17, 1996, the defendant and several others were standing under a tree in the B.W. Cooper Housing Project when they were approached by N.O.P.D. officers Shelita Butler, Errol Foy and Joe Belisle in an unmarked black Ford Taurus. The officers were all working in the Community Oriented Policing Squad (COPS), which operated under a federal grant to put more police officers in housing projects with the highest crime rates. Officers Butler and Foy exited the vehicle first to "interview" the men. As they approached, the defendant began to quickly walk away towards a white Mitsubishi. Officer Foy chased after the defendant, while Officer Butler remained behind to search the others. Officer Belisle called to the defendant by name, but the defendant ignored his requests to stop. Officer Belisle, who still had one leg in the police vehicle, got back into the vehicle and drove to a position *416 that blocked the defendant. He then searched the defendant, beginning with his waistband. He retrieved a plastic bag that contained twenty-five foil-wrapped packets and $217.00 in cash.
On the way to the substation, the defendant asked the officers why they were tripping over the baking soda they got off of him. When they arrived at the station, the defendant further stated that he should have run, that they would not have caught him, but if they did he would have gotten rid of the stuff.
A few months later, on October 10, 1996, Officers Butler and Norbert Carroll were in a marked police vehicle, and Officer Belisle was in a second marked vehicle, when they observed the defendant driving recklessly on Erato Street. The defendant then made a sudden left turn into the Rocheblave Courtyard in the B.W. Cooper Housing Project, exited his vehicle and ran. Officers Butler and Carroll followed the defendant into the Rocheblave driveway, then exited their vehicle to run after him. Officer Belisle was still in his vehicle on Erato Street. When he saw the defendant run through the courtyard, he exited his vehicle and apprehended him. While running, the defendant tossed a plastic bag of white powder over his shoulder which was retrieved by Officer Butler. Upon arrest, the defendant was found to have $105.00 on his person.
Four randomly selected foil packets from the bundle seized on July 17 were tested and found positive for heroin. The total weight for the twenty-five packets, including the foil, was 3.3 grams. The October 10 bag also tested positive for heroin. The total weight for that bag was 6.6 grams.
The defendant admitted convictions for armed robbery, carrying a concealed weapon and possession of marijuana. He testified that he was a heroin addict who repaired cars and installed stereo equipment in cars to make money to support his habit. He denied possession of the foil packets from the July 17 arrest, but rather testified that Officer Belisle was out to get him and came up with the packets somehow when he conducted the search. He denied the statements he allegedly made on the way to the substation. He testified that, at his arrest, he denied knowing what was in the packets because they were not his. The defendant admitted possession of the October 10 bag of heroin, but claimed it was for his personal use. He claimed that the heroin seized from him on October 10 would last him no more than three days. He further testified that it would take at least ten of the foil packets to give him any effect.

ERRORS PATENT REVIEW
A review of the record for errors patent indicates that there were none.

ASSIGNMENT OF ERROR
The defendant avers that the seizure of heroin as to both counts was in violation of the U.S. and Louisiana constitutions as the seizures were warrantless, and the officers lacked probable cause to arrest or reasonable suspicion for investigatory stops. He further argues, as to count one, that even if there were reasonable suspicion for the investigatory stop, the officer lacked grounds for a protective search.
"Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime." State v. Wilson, 467 So.2d 503, 515 (La.1985), cert. den., Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246; State v. Ruffin, 448 So.2d 1274 (La.1984); State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ denied, 531 So.2d 764 (1988). A search incident to a lawful arrest is a recognized exception to the warrant requirement. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Wilson.
*417 A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.Code Crim. Proc. art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.Code Crim. Proc. art. 215.1(B). "Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Herman Matthews, 94-2112 (La.App. 4th Cir.4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4th Cir.2/25/94), 633 So.2d 819.
As to count one, we find nothing in the case record that supports a finding of probable cause when the officers arrived on the scene. In count one, there were three officers in plainclothes in a single unmarked car driven by Officer Belisle. Officers Butler and Foy exited the vehicle first to "interview" the men standing under a tree in the project. Except that it was an area known for high drug activity, there was no allegation of reasonable suspicion at that point. The defendant attempted to walk away, but was stopped by Officer Belisle, who blocked his exit with the police vehicle, while Officer Foy followed him from the rear.
Officer Belisle testified at trial that, prior to the stop, he observed the defendant holding an object in his hand as if he were showing it to the individuals standing around him. According to Belisle, when the defendant looked up and saw the officers, he showed an expression of surprise, then put the object in his waistband and walked away. While this alone might support a finding of reasonable suspicion, we find that is not the case here.
Our review of the evidence in the record indicates that Officer Belisle's testimony is inconsistent with the facts and circumstances surrounding the stop as reported by him in the police report. Although the display of an unknown object is the only particularized fact that could possibly indicate reasonable suspicion, Officer Belisle failed to mention it in his police report. Likewise, he failed to mention that the defendant had a look of surprise when he noticed the officers. Rather, he only noted that the defendant turned and walked away, putting an object from his hand into his pants pocket. In addition, neither of the other officers observed the object being displayed to the others; nor did they even hesitate to testify that they were doing a routine detention for investigation of everyone who happened to be standing in the area. In fact, the others were all stopped and searched, based on no apparent suspicion, and found free from contraband.
The testimony of the other officers almost directly contradicts the testimony of Officer Belisle, that the defendant was stopped because he was displaying an object, looked surprised when he saw the police and walked hurriedly away. They only testified that the defendant walked away when they approached.
In State v. Cleveland Neal, 98-1433 (La. App. 4th Cir.9/30/98), 719 So.2d 659, two men left in different directions when officers approached. The defendant clutched his waistband as he fled. On writs, we found that the officers lacked reasonable suspicion for an investigatory stop, and the evidence seized should have been suppressed.
Like the instant case, the officers in Neal saw no transaction, contraband or weapon, nor were they acting on any specific complaint. In Neal, the State produced the additional evidence that the area was known for high drug activity, but that was insufficient to justify the investigatory stop. In the instant case, the officers testified *418 to familiarity with the defendant and to the high crime activity of the area.
Credibility of witnesses is a question of fact left to the discretion of the trier of fact and will not be disturbed on appeal unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). However, credibility in the instant case, relates to the admissibility of evidence, which is a matter of law to be decided by the trial court and reviewed by this court.
Considering the contradictory testimony and actions of the other officers, we find the trial court abused its discretion in admitting the evidence in count one based only on the testimony of Officer Belisle. Moreover, even if Officer Belisle's testimony is fully accepted, a display of an unknown object, without other factors, is insufficient to raise a reasonable suspicion that the defendant possessed or intended to distribute drugs. Because the evidence in count one was erroneously admitted, defendant's conviction and sentence in count one are reversed.
As to count two, three officers in two marked vehicles observed the defendant driving recklessly, turn into a driveway, then exit his vehicle and attempt to run away from them. The defendant was observed dropping the heroin during the chase.
As noted by the defendant, the Louisiana Constitution protects a person from unreasonable search and seizure not only when the police stop an individual, but also when the police create a situation in which actual stop of the individual is imminent. State v. Tucker, 626 So.2d 707, 712 (La.1993). The defendant claims that the officers lacked reasonable suspicion for the original stop, thus he was protected from seizure for the property abandoned during the chase prior to the imminent stop.
The defendant's reckless driving gave the officers a reason to pursue him for a traffic violation. However, his driving in a reckless manner in combination with his subsequent attempt to flee police officers was sufficient for the officers to reasonably suspect he was involved in other criminal activity. Under those circumstances, the officers lawfully stopped him and seized the abandoned heroin. There was no error in the seizure of the heroin in the count two charge.
Accordingly, for the above stated reasons, we reverse the defendant's conviction and sentence in count one, and affirm his conviction and sentence in count two.
CONVICTION AND SENTENCE ON COUNT ONE, REVERSED; CONVICTION AND SENTENCE ON COUNT TWO, AFFIRMED.