754 So.2d 1108 (2000)
STATE of Louisiana
v.
Curtis SCOTT.
No. 98-KA-2642.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 2000.
*1109 Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant.
Harry F. Connick, District Attorney of Orleans Parish, Holli Herrle-Castillo, Assistant District Attorney, New Orleans, Louisiana, Counsel for State-Appellee.
(Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr., Judge ROBERT A. KATZ).
PLOTKIN, Judge.
On November 17, 1997, defendant-appellant Curtis Scott was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967(C)(2). On April 6, 1998, the trial court heard and denied defendant's motion to suppress evidence. On April 21, 1998, after defendant waived his right to a jury trial, the trial court found him guilty of attempted possession of cocaine. On May 8, 1998, defense counsel made an oral motion for post-verdict judgment of acquittal, which was denied. The court then sentenced defendant to one year at hard labor and denied defendant's motion to reconsider sentence. The State requested a multiple bill hearing, which was held on July 8, 1998; and at that hearing, defendant was adjudicated a third-time offender and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence, as mandated by La. R.S. 15:529.1 A(1)(b)(ii).

STATEMENT OF FACTS:
At approximately 10:00 p.m. on July 27, 1997, Detective David Adams and his partner, Sergeant Cyril Davellier, were on patrol in the 1900 block of St. Ann Street, an area known for drug activity and prostitution. The officers observed defendant in or close to the rear parking lot of a hotel; defendant was moving back and forth and looking into one of the hotel's doors, which was open. The hotel itself was open for business. The officers chose to investigate defendant's actions and exited their vehicle to approach him.
To insure his and his partner's safety, Det. Adams frisked defendant and noted a hard object, perhaps three inches long, in his pocket. Det. Adams assumed that the object was either a knife or a crack pipe and retrieved it, finding it to be a crack pipe. At trial, the pipe was placed into evidence. Det. Adams described it as a glass tube and noted that the white powder residue was visible and that both ends of the tube were charred. Det. Adams admitted on cross-examination, however, that he arrested defendant for possession of drug paraphernalia and not for possession of cocaine. The defense stipulated that, if the criminalist who analyzed the pipe were called, he would testify that its residue tested positive for cocaine.

ERRORS PATENT:
A review of the record for errors patent reveals that defendant was sentenced to one year at hard labor immediately following the denial of his motion for post-verdict judgment of acquittal. Defendant entered a motion for reconsideration of sentence, which was denied; however, that sentence was vacated when defendant was resentenced under the multiple bill. In any event, we find no defect in the process because sentencing a defendant immediately after denying his motion for post-verdict judgment of acquittal under C.Cr.P. art. 821 is proper where at least three days have elapsed between conviction and sentence, as required by La. C.Cr.P. art. 873. State v. Banks, 503 So.2d 529 (La.App. 3 Cir.1987). The twenty-four hour delay is only required following the denial of a motion for new trial or in arrest of judgment. La.C.Cr.P. art. 873.

ASSIGNMENT OF ERROR ONE:
In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress evidence. Defendant specifically avers that *1110 the officers lacked reasonable suspicion to conduct an investigatory stop of him.
A law enforcement officer may stop a person in a public place when he reasonably believes that person is committing, has committed, or is about to commit a crime. La.C.Cr.P. art. 215.1. An officer who stops a person pursuant to Art. 215.1 may conduct a limited frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1 B.
"Reasonable suspicion" is something less than the probable cause required for an arrest, and a reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of a suspect's rights. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. A hunch or suspicion of illegal activity is insufficient to establish reasonable grounds to stop a person; rather, the officer must have a particularized suspicion based on articulable facts. State v. Basile, 97-1162 (La.App. 4 Cir. 9/24/97), 700 So.2d 1062, writ denied, 97-2503 (La.12/19/97), 706 So.2d 455; State v. Purvis, 96-787 (La.App. 3 Cir. 12/11/96), 684 So.2d 567; State v. Williams, 421 So.2d 874, 876 (La. 1982).
In the instant case, the only facts articulated by the officers were (1) that the area they were patrolling was known for narcotics and prostitution activity and (2) that defendant was standing or hovering near and looking into the "open" back door of an open business establishment.[1] On the other hand, at the suppression hearing, Det. Adams admitted that the parking lot near which he saw defendant was a public place, presumably meaning that anyone could access the area without difficulty. The detective also testified that defendant never attempted to open or enter the hotel door, nor did he notice defendant speaking or gesturing to anyone. Defendant did not attempt to discard or hide the pipe or to flee when he noticed the officers, although Det. Adams stated that defendant had no opportunity to do so because the officers were very close to him before he first noticed them. In fact, the detective testified that defendant did not notice the officers until they were "getting out of the car right on him."[2] The record contains no statement by the officers as to what crime they believed defendant was about to commit, nor is there any indication that the particular hotel was known for drug trafficking. Finally, the State elicited no testimony indicating how long the officers observed defendant's conduct before they decided to conduct an investigatory stop.
In State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174, the defendant was standing in an area known for drug trafficking and prostitution. Upon seeing a marked police car, he briskly placed something in his pants pocket. Having observed the defendant's motion, the police officer driving the car stopped and frisked him, finding cocaine. The defendant filed a motion to suppress this evidence, which the trial court granted. This court later affirmed, finding that the officer lacked reasonable suspicion to conduct the investigatory stop.
In the recent case of State v. Ratliff, 98-0094 (La.App.4 Cir.5/19/99), 737 So.2d 252, writ denied, 99-1523 (La.10/29/99), 1999 WL 1028862, the defendant was observed standing with two or three other subjects in front of a residence late in the evening. Officers on pro-active patrol made an investigatory stop, having received general complaints in the neighborhood. *1111 The officers observed defendant with his arms folded and holding something in his hand, but they saw no exchange and, in fact, admitted that none of the subjects appeared to be doing anything wrong. This court there considered the reasonableness of the stop as follows:
We recognize that the reputation of an area is an articulable fact upon which an officer may rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.), writ denied, 578 So.2d 131 (1991). We also note that deference should be given to the experience of the officers who were present at the time of the incident. State v. Taylor, 96-1843, p. 4 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 770, writ denied, 98-2233 (La.1/8/99), 1999 WL 39785, 734 So.2d 1224.
However, considering the totality of the circumstances, we must conclude that the officers lacked reasonable suspicion to stop Mr. Ratliff. Arguably, the fact that Mr. Ratliff kept his hand clenched the entire time the officers questioned him and his group and while he walked to the police car reasonably could have aroused the officers' suspicion. However, Mr. Ratliff and his friends were subjected to an investigatory stop before this happened. Officer Burns testified that he decided to conduct an investigatory stop simply because Mr. Ratliff was standing, with his arms folded and his fist closed, on the sidewalk in front of a house at 11:00 in the evening in an area known for drug trafficking. Officer Burns could point to no other factors in support of the stop. He observed no transactions between the members of the group or passing vehicles; none of the group attempted to flee when the officers' approached; no one was doing anything wrong.
Although this Court is cognizant of the drug related criminal problem in this state and City, we cannot agree that the officers' stop of Mr. Ratliff was based on reasonable suspicion. For this reason, the conviction is reversed.
Id. at pp. 3-4, 737 So.2d at 254-255 (emphasis added).
In light of these cases and the record before us, it appears that the State did not produce sufficient evidence to support the conclusion that the officers acted on more than pure suspicion when they stopped and frisked the defendant. The record reveals that, at the time the officers decided to stop defendant, his actions were consistent with those of someone waiting for a hotel employee or guest. There were no objective signs that defendant was engaged in drug-related or other criminal activity. Cf. State v. Smith, 96-0640 (La. App. 4 Cir. 4/30/97), 694 So.2d 509, writ denied, 97-1424 (La.11/14/97), 703 So.2d 1287 (suspect in alley in high-crime area seen holding unmarked medicine bottle commonly used to hold illegal drugs). Finally, we note that the State has cited no cases tending to justify a finding of reasonable suspicion on the minimal facts presented here.
Because the trial court erred in denying defendant's motion to suppress, we reverse defendant's conviction. We accordingly pretermit discussion of the subsequent assignments of error raised by defendant and remand the case to the trial court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] It is unclear from the record whether the "open" door was actually standing open in addition to being unlocked. However, because defendant was looking or "peeping" into the door, it must be assumed that the door, if not a glass door, was at least partially standing open.
[2] The inability of defendant to hear or otherwise notice the approaching police car before it came very near to him would further indicate that the area in which he was standing was quite accessible from the public street.